IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRAQ MIDDLE MARKET DEVELOPMENT :
FOUNDATION,
                                    :
    Plaintiff,
                                    :
        v.                 Civil Case No. GLR-15-1124
                                    :
MOHAMMAD ALI MOHAMMAD
HARMOOSH, et al.,                   :

    Defendants.                     :

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants', Mohammad Ali Mohammad Harmoosh and Jawad Alharmoosh, Motion to Compel Arbitration and Dismiss or Stay Action.  (ECF No. 10).  This case involves Plaintiff's, Iraq Middle Market Development Foundation ("IMMDF"), attempt to enforce a foreign-money judgment obtained in Iraq against Harmoosh.  IMMDF seeks to record its Iraqi judgment (Count I) and alleges Harmoosh fraudulently conveyed his ownership interests in a dissolved corporation and two parcels of real property to his son, AlHarmoosh, in an effort to avoid collection of this debt (Count II).  (ECF No. 1).  Defendants seek to dismiss IMMDF's action.

The Motion is ripe for disposition.  Having reviewed the Motion and supporting documents, the Court finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014).  For the reasons stated below, the Court will grant the Motion.

1

# I.   BACKGROUND[1]

On November 10, 2006, IMMDF and Harmoosh's company, Al-Harmoosh for General Trade, Travel, and Tourism ("AGTTT"), located in Iraq, entered into a Medium Term Loan Agreement ("Loan Agreement").  Pursuant to the terms of the Loan Agreement, IMMDF provided AGTTT with $2,000,000 to expand its business.  Harmoosh, an Iraqi and American citizen, signed the Loan Agreement in his capacity as Managing Partner of AGTTT and a personal guaranty in his individual capacity in the form of a promissory note.  AGTTT then allegedly failed to make payments on the loan in accordance with the terms of the Loan Agreement. In 2008, AGTTT went out of business.

On July 30, 2010, in an effort to collect the unpaid balance on the loan, IMMDF brought suit in this Court to enforce the promissory note.  Iraq Middle Mkt. Dev. Found. v. Al Harmoosh, 769 F.Supp.2d 838 (D.Md. 2011).  Harmoosh moved to dismiss the case for lack of subject-matter jurisdiction, arguing that the arbitration provision in the Loan Agreement barred IMMDF from pursuing litigation.  Id. at 840.  On January 20, 2011, the Court found that the promissory note was part of the Loan Agreement, which contains an arbitration provision encompassing all disputes and claims between the parties that

---

[1] Unless otherwise noted, the following facts are taken from the parties' briefings on the instant Motion, and are viewed in the light most favorable to the nonmoving party.

may "arise out of or in connection with the [Loan] Agreement or a breach . . . thereof." Id. at 842.  As a result, the Court concluded that it lacked subject-matter jurisdiction to hear IMMDF's claims and dismissed the case with prejudice.  Id. at 842-43.

Seeking another venue to enforce the promissory note, in or around February 2014, IMMDF brought suit against Harmoosh in the Court of First Instance for Commercial Disputes in Baghdad, Iraq.  During the Iraqi proceedings, Harmoosh was represented by an Iraqi attorney, Wael Jasim Kadhim Al-Waeli.  On April 9, 2014, the Iraqi trial court entered judgment against Harmoosh in the amount of $2,000,000 plus attorney's fees.  Harmoosh unsuccessfully appealed the judgment to the Baghdad/Al-Rasafa Federal Court of Appeals, which affirmed the trial court judgment on or about August 3, 2014.  Harmoosh then appealed the judgment to the Iraqi Federal Court of Cassation, which also affirmed the trial court's decision on September 22, 2014. Harmoosh exhausted his appeals in the Iraqi judicial system. IMMDF now seeks to collect on the judgment it received against Harmoosh in Iraq.

On April 20, 2015, IMMDF brought suit against Defendants, seeking to record its Iraqi judgment and alleging fraudulent conveyance.  (ECF No. 1).  On May 14, 2015, Defendants filed a Motion to Compel Arbitration and Dismiss or Stay Action.  (ECF

No. 10).   On June 22, 2015, IMMDF filed an Opposition to the Motion.   (ECF No. 13).   On August 3, 2015, Defendants filed a Reply to IMMDF's Opposition.   (ECF No. 16).   On August 6, 2015, IMMDF filed a Surreply.[2]   (ECF No. 17-2).

## II.   DISCUSSION

### A.  Standard of Review

The Court notes that although Defendants title their Motion as a "Motion to Compel Arbitration," Defendants do not seek to compel Count I.   Rather, they present several arguments against recognition of IMMDF's Iraqi judgment.   The Court will, therefore, construe the Motion as both a motion to compel arbitration and to dismiss for failure to state a claim.

A court may treat a motion to compel arbitration as either a motion to dismiss or a summary judgment motion.   PC Constr. Co. v. City of Salisbury, 871 F.Supp.2d 475, 477 (D.Md. 2012) (quoting Shaffer v. ACS Gov't Servs., Inc., 321 F.Supp.2d 682, 683-84 (D.Md. 2004)).   "Whether the motion should be treated as

---

[2] IMMDF's Motion for Leave to File Surreply (ECF No. 17) is also pending before the Court.   The Court may grant a surreply "when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply." Hossfeld v. Gov't Emps. Ins. Co., 88 F.Supp.3d 504, 508 (D.Md. 2015) (citing Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003)), aff'd, 85 F.App'x 960 (4th Cir. 2004)).   Because Defendants present new evidence and arguments in their Reply to IMMDF's Opposition (ECF No. 16), the Court will grant the Motion for Leave to File Surreply and consider the Surreply (ECF No. 17-2) when resolving the Motion to Compel and Dismiss (ECF No. 10).

a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings." Id.

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "When 'matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).

Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586–87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247–48.

A material fact is one that might affect the outcome of a party's case.  Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  The materiality is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A genuine issue concerning a material fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  Anderson, 477 U.S. at 248.  Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Here, because the Court must consider matters outside of the pleadings, the Motion will be construed as one for summary judgment.

B. **Analysis**

    **1.   Recognition of a Foreign Judgment**

Maryland's Uniform Foreign Money Judgments Recognition Act ("Recognition Act") governs whether the Court should recognize a foreign judgment.  Md.Code Ann., Cts. & Jud.Proc. §§ 10-701 <u>et seq.</u> (West 2015); <u>Guinness PLC v. Ward</u>, 955 F.2d 875, 883 (4th Cir. 1992); <u>see also</u> <u>Wolff v. Wolff</u>, 389 A.2d 413, 415 (Md.Ct.Spec.App. 1978), <u>aff'd</u>, 401 A.2d 479 (Md. 1979).  A judgment that is not entitled to recognition will not be enforced.  <u>See</u> <u>Wolff</u>, 389 A.2d at 415 n.3 ("Enforcement, however, necessarily comprehends recognition.").

Maryland's Recognition Act "applies to a foreign judgment that is final, conclusive, and enforceable where rendered even though an appeal is pending or it is subject to appeal," Cts. & Jud. Proc. § 10-702, and provides grounds for nonrecognition of a foreign judgment, <u>id.</u> § 10-704.  Section 10-704 of Maryland's Recognition Act provides four mandatory grounds for nonrecognition of a foreign judgment:

> (1) The judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
> (2) The foreign court did not have personal jurisdiction over the defendant;
> (3) The foreign court did not have jurisdiction over the subject matter; or
> (4) The judgment was obtained by fraud.

<u>Id.</u> § 10-704(a)(1)-(4).

The section also provides five discretionary grounds for nonrecognition of a foreign judgment:

> (1) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;
> (2) The cause of action on which the judgment is based is repugnant to the public policy of the State;
> (3) The judgment conflicts with another final and conclusive judgment;
> (4) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute was to be settled out of court; or
> (5) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

Id. § 10-704(b)(1)-(5).

If a foreign judgment meets the requirements of section 10-702 and does not fall under any of the mandatory or discretionary grounds for nonrecognition, then it "is conclusive between the parties to the extent that it grants or denies recovery of a sum of money . . . [and] enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." Id. § 10-703.

Defendants advance several arguments under § 10-704 for nonrecognition of IMMDF's Iraqi judgment. The Court will consider their arguments in turn.

### a. Mandatory Grounds for Nonrecognition

Defendants argue that IMMDF's Iraqi judgment is not entitled to recognition under all four of the Maryland Recognition Act's mandatory grounds for nonrecognition. Specifically, Defendants contend: (1) the Iraqi legal system does not provide impartial tribunals or due process; (2) the Iraqi court lacked personal jurisdiction; (3) the Iraqi court lacked subject-matter jurisdiction; and (4) IMMDF obtained its judgment by perpetuating fraud on the court. The Court disagrees.

### i. Impartial Tribunals and Due Process

Defendants contend that Iraqi courts are not impartial and do not provide due process. Due process under the Recognition Act "does <u>not</u> require that the procedures employed by the foreign tribunal be <u>identical</u> to those employed in American courts. The statute simply requires that the procedures be '<u>compatible</u> with the requirements of due process of law.'" <u>Guinness</u>, 955 F.2d at 900 (quoting <u>Ingersoll Milling Mach. Co. v. Granger</u>, 833 F.2d 680, 687 (7th Cir. 1987)).

While Maryland courts have not interpreted § 10-704(a)(1), other courts interpreting the same provision of the Uniform Foreign-Money Judgments Recognition Act ("UFMJRA")[3] have

---

[3] The Maryland Recognition Act adopted the due process provision of the UFMJRA without any changes to the UFMJRA

emphasized that "the foreign judicial system must only be 'fundamentally fair' and 'not offend against basic fairness.'" DeJoria v. Maghreb Petrol. Expl., S.A., 804 F.3d 373, 380 (5th Cir. 2015) (quoting Soc'y of Lloyd's v. Turner, 303 F.3d 325, 330 (5th Cir. 2002)) (applying Texas's Recognition Act); see also Soc'y of Lloyd's v. Ashenden, 233 F.3d 473, 477 (7th Cir. 2000) (applying Illinois's Recognition Act); Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995) (applying California's Recognition Act); Ingersoll, 833 F.2d at 688 (applying Illinois's Recognition Act).

This inquiry examines the fairness of the entire judicial system, not the details of a particular proceeding. DeJoria, 804 F.3d at 381; Turner, 303 F.3d at 330 (emphasizing that "the Texas Recognition Act requires that the foreign judgment be 'rendered [only] under a system' that provides impartial tribunals and procedures compatible with 'due process of law'" (quoting Tex.Civ.Prac. & Rem.Code § 36.005(a)(1))); Ashenden, 233 F.3d at 477 (relying on the use of "system" in Illinois's Recognition Act and rejecting an approach that would allow parties to challenge the due process underlying "particular judgments"). Proving that a country's judicial system is not fundamentally fair is a high bar to clear. DeJoria, 804 F.3d at

---

language. Compare Uniform Foreign Money–Judgments Recognition Act § 4(a)(1), with Cts. & Jud.Prac. § 10-704(a)(1).

384. "A case of serious injustice must be involved." Guinness,
955 F.2d at 900 (quoting Ingersoll, 833 F.2d at 687).

For instance, in Pahlavi, the United States Court of
Appeals for the Ninth Circuit declined to recognize an Iranian
judgment because the country's courts did not provide the
"ingredients of basic due process." 58 F.3d at 1413. The
court's finding was based on official State Department reports
instituting a travel ban for U.S. citizens during the relevant
time period and discussing the lack of due process and
fundamental fairness in the Iranian judicial system. Id. at
1411-12. The court noted that public trials are rare and highly
politicized and "the regime does not believe in the independence
of the judiciary." Id. (citation omitted). The court further
noted that Iran's revolutionary courts could take jurisdiction
over civil court cases and overturn decisions in those cases,
and U.S. citizens had "little reasonable expectation of
justice." Id.

In support of their argument that the Iraqi legal system
does not provide due process and its courts are not impartial,
Defendants rely on Ashenden, a 2007 Washington Post article[4] (ECF
No. 10-7), and Harmoosh's affidavit attesting that his Iraqi

---

[4] Walter Pincus, Shhh . . . There's Corruption in Iraq, Wash.
Post (June 25, 2007), http://www.washingtonpost.com/wp-
dyn/content/article/2007/06/24/
AR2007062401301.html.

attorney told him that the Iraqi trial court would accept a bribe in exchange for entering judgment in his favor and the Court of Appeals requested a bribe in exchange for overturning the trial court judgment (ECF No. 10-8). Defendants' reliance, however, is misplaced.

First, the Ashenden court did not address whether the Iraqi legal system provided impartial tribunals or due process. Rather, it merely noted that if the judgment at issue had been rendered in a country such as Iraq, "whose adherence to the rule of law and commitment to the norm of due process are open to serious question," the court would have considered the issue of impartiality. 233 F.3d at 477. In addition, even if the Ashenden court had considered the fairness of the Iraqi legal system, the opinion was rendered in 2000—years before the fall of Saddam Hussein and restructuring of the Iraqi government. (Pl's Opp'n to Defs.' Mot. ["Opp'n"] 9, ECF No. 13). Ashenden, therefore, does not necessarily reflect the realities of Iraq's court system, which was instituted after Hussein was removed from power in 2003. The 2007 Washington Post article fails to support Harmoosh's argument for the same reason—it does not provide an account of the operation of the Iraqi legal system in 2014—when IMMDF initiated its lawsuit.

Under its new government, the articles of Iraq's 2005 Constitution set forth several principles designed to establish

due process.  (See ECF Nos. 13-16, 13-17).  For example, Article 15 of the Iraqi Constitution prohibits the deprivation of an individual's "life, security and liberty" without "a decision issued by a competent judicial authority." (Opp'n Ex. C-4, at 5, ECF No. 13-16).  Article 19 creates an independent judiciary and guarantees a right to litigate and, at all stages of litigation, to defend.  (ECF No. 13-18).  In addition, Iraq's Court of First Instance, which was specifically established to hear commercial suits like the one between IMMDF and Harmoosh, presided over the case.  (ECF No. 13-19).  Moreover, evidence submitted by both parties shows that Harmoosh had an attorney who represented him during all court proceedings.  The evidence also establishes that Harmoosh received notice of the Iraqi suit and had the opportunity to litigate and defend his case in Iraqi court.  (ECF Nos.  13-7 through 13-11).  Thus, it appears that the Iraqi judicial system utilizes procedures compatible with due process of law.

Defendants also submitted an affidavit attesting that Harmoosh's Iraqi attorney told him that the Iraqi appellate court requested a bribe in exchange for overturning the trial court judgment.  (ECF No. 10-8).  While Harmoosh's affidavit bolsters Defendants' argument, the inquiry into the fundamental fairness of a country's judicial system involves examining the system as a whole, not the details of a particular proceeding.

<u>DeJoria</u>, 804 F.3d at 380.  Defendants have not produced evidence of systemic problems with bribery in the Iraqi judicial system. The Court, therefore, finds Defendants have failed to demonstrate that the Iraqi legal system does not provide impartial tribunals or due process.

### ii. Personal and Subject-Matter Jurisdiction

First, Defendants contend the Iraqi courts did not have personal jurisdiction over Harmoosh.  Defendants argue Harmoosh has no contacts or connections to Iraq because he is a U.S. citizen and his Iraqi company, AGTTT, went out of business in 2008.  IMMDF submitted evidence to establish the Iraqi courts had personal jurisdiction over Harmoosh.  Article 14 of the Iraqi Civil Code states in relevant part: "An Iraqi national shall be tried before the courts of Iraq in respect of the rights owing from him even those which have been created abroad." (Opp'n Ex. C1, at 261, ECF No. 13-13).  Though AGTTT went out of business in 2008—two years after it entered into the Loan Agreement with IMMDF in 2006—it is undisputed that Harmoosh is an Iraqi citizen, as evidenced by his Iraqi passport. (ECF No. 13-4).  Thus, construing the evidence in the light most favorable to IMMDF, Defendants have failed to demonstrate the Iraqi courts lacked personal jurisdiction over Harmoosh.

Next, Defendants argue the Iraqi courts lacked subject-matter jurisdiction over the action because the matter should

have been submitted to arbitration in accordance with the Loan
Agreement.    IMMDF   contends   Harmoosh   waived   his   right   to
arbitrate   in   the   Iraqi   trial   court.    Article   253   of   Iraq's
Amended Civil Procedure Code No. 83 of 1969 ("Article 253"),
states

> "[i]f the parties agree to resolve the
> dispute through arbitration, then a suit
> cannot be heard by the courts before all
> arbitration avenues have been exhausted. . .
> . However, if one of the parties resorts to
> the court in violation of the arbitration
> agreement and the other party does not
> object to that, then the suit may be heard
> and the arbitration clause shall be deemed
> as null and [void]."

(Opp'n Ex. B-6, at 3, ECF No. 13-12).

Section 24.2 of the Loan Agreement states all disputes
arising out of the Loan Agreement "shall be finally and
exclusively settled by arbitration." (Mot. to Compel Ex. 1, ECF
No. 10-1).   Defendants submitted an affidavit from Harmoosh's
Iraqi attorney, Al-Waeli, attesting that he raised the Loan
Agreement's arbitration provision before the Iraqi trial and
appellate courts.[5]    (ECF No. 16-1).    IMMDF submitted a

---

[5]  Accompanying his Defendant's Reply Brief, Defendants
submitted translations of Al-Waeli's affidavit and what appears
to be an Iraqi appellate court brief.  (ECF Nos. 16-1, 16-2).
IMMDF contends that the translations and affidavit do not
contain the necessary indicia of reliability and the Court
should not consider them.  "Under Fed.R.Civ.P. 56, as amended in
2010, facts in support of or opposition to a motion for summary
judgment need not _be_ in admissible form; the requirement is that
the party identify facts that _could_ _be_ put in admissible form."

translation of an affidavit from its Iraqi attorney, Salam Zuhair Dhia, attesting Harmoosh's attorneys failed to raise the Loan Agreement's arbitration provision as a defense in accordance with Article 253 or this Court's 2011 Opinion.[6]   (ECF No. 13-6).

IMMDF also submitted translations of summaries from the Iraqi trial court hearings to demonstrate that Harmoosh's attorneys never raised the arbitration provision, thereby rendering the provision null and void pursuant to Article 253. (ECF Nos. 13-7 through 13-11).   The Court notes these translations are merely short summaries of the hearings (Opp'n Ex. B, at ¶ 6, ECF No. 13-6) and, therefore, may not address every issue raised by the parties.   As such, the Court finds that they are insufficient to demonstrate that Harmoosh waived his right to arbitrate in the Iraqi trial court.

---

Wonasue v. Univ. of Md. Alumni Ass'n, No. PWG-11-3657, 2013 WL 5719004, at *8 (D.Md. Oct. 17, 2013).   Although the translations may not comply with certain procedural requirements establishing their reliability, these deficiencies are not incurable. Because the affidavit and appellate brief could be put in admissible form, the Court will, therefore, consider them when ruling on the Motion.

[6] Although this Court concluded that it did not have subject-matter jurisdiction over IMMDF's action to enforce Harmoosh's promissory note due to the arbitration provision in the Loan Agreement, it dismissed IMMDF's case, but did not enter an order compelling arbitration because Harmoosh submitted a motion to dismiss, not a petition to compel arbitration. Al Harmoosh, 769 F.Supp.2d at 842-43.

Despite the parties' competing affidavits, there is no evidence demonstrating that the <u>Iraqi courts</u> found that Harmoosh waived the arbitration provision and deemed the provision null and void pursuant to Article 253.[7]  If Harmoosh's attorney did raise the arbitration provision as a defense, the Iraqi courts may not have had subject-matter jurisdiction over the case under Article 253.  Conversely, if Harmoosh's attorney did not raise the arbitration provision as a defense and continued to litigate the case, then the Iraqi courts would have had subject-matter jurisdiction over the case.

Thus, Defendants have not submitted sufficient evidence to establish that the Iraqi courts lacked subject-matter jurisdiction.  Accordingly, Defendants have not established that they are entitled to summary judgment on this mandatory ground for nonrecognition.

### iii.   Fraud on the Court

Defendants also argue that this Court should not recognize the Iraqi judgment because IMMDF committed fraud on the Iraqi court.

---

[7] "[W]aiver of the right to arbitrate is 'not to be lightly inferred' and 'the party opposing arbitration bears a <u>heavy burden</u> of proving waiver.'"  <u>Liberty Mut. Grp., Inc. v. Wright</u>, No. DKC 12-0282, 2012 WL 1446487, at *3 (D.Md. Apr. 25, 2012) (quoting <u>MicroStrategy, Inc. v. Lauricia</u>, 268 F.3d 244, 249-51 (4th Cir. 2001)) (emphasis added).  The Court finds that IMMDF's submissions do not meet this heavy burden.

Maryland courts recognize a distinction between two types of fraud: intrinsic and extrinsic. Mueller v. Payn, 352 A.2d 895, 902 (Md.Ct.Spec.App. 1976); see also Schwartz v. Merchs. Mortg. Co., 322 A.2d 544, 547 (Md. 1974) (collecting cases). Intrinsic fraud typically involves allegations of a party obtaining a judgment based on perjured testimony or falsified documents. Schwartz, 322 A.2d at 546. Extrinsic fraud, on the other hand, "goes to the question of jurisdiction" or involves circumstances preventing "the defeated party from fully and fairly presenting his case." Mueller, 352 A.2d at 902 (citations omitted). "[F]raud is extrinsic when it actually prevents an adversarial trial, but is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit that truth was distorted by the complained of fraud." Id. at 903 (quoting Schwartz, 322 A.2d at 547).

Examples of extrinsic fraud include the plaintiff keeping the defendant away from court, the plaintiff taking action to prevent the defendant from being informed of the suit, or an attorney "fraudulently or without authority" representing a party, resulting in her defeat. Schwartz, 322 A.2d at 547 (quoting United States v. Throckmorton, 98 U.S. 61, 65–66, (1878)). "Fraud, to be available as a defense against an action on a foreign judgment, must be extrinsic fraud." Mueller, 352

A.2d at 902 (quoting Second Nat'l Bank of Phila. v. Thompson, 56 A.2d 492, 496 (N.J.Ch. 1947)).

Defendants contend that IMMDF committed fraud on the Iraqi court because it did not abide by the arbitration provision in the Loan Agreement and initiated litigation in Iraq, did not disclose this Court's 2011 Opinion dismissing IMMDF's case for lack of subject-matter jurisdiction, and obtained a judgment in excess of what is owed on the loan.  This conduct may amount to intrinsic fraud, but it does not constitute the extrinsic fraud necessary for nonrecognition of the Iraqi judgment.

Moreover, Defendants do not demonstrate that IMMDF's failure to inform the Iraqi trial court of the arbitration provision and this Court's 2011 Opinion prevented an adversarial trial.  In fact, Harmoosh was represented by two attorneys in the Iraqi trial court who presented arguments on his behalf. (ECF Nos. 13-9 through 13-11).  Thus, Defendants have not presented sufficient evidence that IMMDF prevented Harmoosh from fully and fairly presenting his case.  Accordingly, Defendants have failed to present sufficient facts to establish fraud as a ground for nonrecognition of the Iraqi judgment.[8]

---

[8] Defendants also briefly argue in their Reply Brief to Plaintiff's Opposition that, under § 10-705(4)(b)(2) of Maryland's Recognition Act, IMMDF's action to enforce the entire $2 million value of the promissory note is repugnant to public policy in Maryland because Harmoosh has partially satisfied his debt, and, entering an order enforcing the entire value of the

## b. Discretionary Ground for Nonrecognition

Defendants further argue that IMMDF's Iraqi judgment is not entitled to recognition because it is contrary to the parties' prior agreement to arbitrate.[9]

Maryland courts have not interpreted § 10-701(b)(4) of its Recognition Act.  Other jurisdictions considering whether to recognize a foreign judgment under the same provision of the UFMJRA have declined to recognize foreign judgments where a party to a contract pursued litigation contrary to an arbitration provision.  See Montebueno Mktg., Inc. v. Del Monte Foods Corp.-USA, No. CV 11-4977 MEJ, 2012 WL 986607, at *2 (N.D.Cal. Mar. 22, 2012), aff'd sub nom., 570 F.App'x 675 (9th Cir. 2014); Tyco Valves & Controls Distrib. GmbH v. Tippins, Inc., No. 04-1626, 2006 WL 2924814, at *7 (W.D.Pa. Oct. 10,

---

judgment would be contrary to this Court's 2011 Opinion.  (See Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. 5, ECF No. 16).  Defendants do not cite, nor does the Court find, any authority to support this proposition.  The Court, therefore, will not consider Defendants' public policy argument.

[9] Defendants also argue that IMMDF's Iraqi judgment is not entitled to recognition pursuant to sub-section 10-704(b)(3) of Maryland's Recognition Act because it conflicts with this Court's 2011 Opinion dismissing IMMDF's previous action for lack of subject-matter jurisdiction.  The Court, however, did not reach the merits of the case and the underlying issues were not litigated.  See Byblos Bank Europe, S.A. v. Sekerbank Turk Anonym Syrketi, 885 N.E.2d 191, 191 (N.Y. 2008) (declining to recognize Belgian judgment that conflicted with earlier Turkish judgment dismissing case on the merits).  As such, Defendants have failed to demonstrate the Iraqi judgment conflicts with a prior existing judgment.

2006) (declining to recognize German default judgment because it was contrary to the parties' agreement to arbitrate); The Courage Co. v. The Chemshare Corp., 93 S.W.3d 323, 338 (Tex.App. 2002) (affirming trial court decision not to recognize Japanese judgment due to parties' agreement to arbitrate).  But see Dart v. Balaam, 953 S.W.2d 478, 482 (Tex.App. 1997) (affirming recognition of Australian judgment because both parties failed to enforce agreement's forum-selection clause).

The U.S. District Court for the Northern District of California decision in Montebueno provides insight on this issue.  Montebueno previously brought a breach of contract suit against Del Monte in the Philippines.  2012 WL 986607, at *1. During the Philippine litigation, Del Monte filed a petition to compel arbitration in the Northern District of California, arguing that the Philippine litigation was contrary to the parties' agreement to arbitrate.  Id.  The court found that the contract contained a valid and enforceable arbitration provision and granted Del Monte's Petition to Compel Arbitration.  Id. Despite the court's order, Montebueno continued its suit against Del Monte in the Philippines and obtained a judgment against Del Monte.  Id.  Montebueno then sought to enforce the judgment in the Northern District of California.  Id.  Del Monte filed a motion to dismiss arguing that the court should not enforce the judgment under section 1716(c)(5) of California's Uniform

Foreign–Country Money Judgments Recognition Act[10] ("UFCMJRA") because it was contrary to an agreement between the parties to arbitrate. Id.  The court found that the proceedings in the Philippines were contrary to a valid agreement between the parties to arbitrate "and, under Section 1716(c)(5), the [c]ourt may exercise its discretion and refuse to recognize the foreign judgment." Id. at *1-*2.

Here, this Court concluded in its 2011 Opinion that the promissory note is part of the Loan Agreement and disputes arising out of its alleged breach are subject to its arbitration provision. Al Harmoosh, 769 F.Supp.2d at 842.  The Court, therefore, finds IMMDF's Iraqi judgment on the promissory note is contrary to the parties' agreement to arbitrate.[11]

Accordingly, the Court finds Defendants have demonstrated that they are entitled to judgment as a matter of law regarding

---

[10] Section 1716(c)(5) of California's UFCMJRA provides that "[a] court of this state is not required to recognize a foreign-country judgment if . . . [t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court."  Cal.Civ.Proc.Code § 1716(c)(5) (West 2016).  Section 10-704(b) of Maryland's Recognition Act provides: "A foreign judgment need not be recognized if . . . [t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute was to be settled out of court."

[11] To the extent IMMDF argues Harmoosh waived his right to arbitrate in the Iraqi Court, the Court finds that it has failed to meet it heavy burden of demonstrating waiver.  See supra note 7.

this discretionary ground for nonrecognition and will grant Defendants' Motion as to Count I.

## 2. Compelling Arbitration

Defendants also seek to compel arbitration. Section 24.2 of the Loan Agreement requires the parties to arbitrate "[a]ll disputes, controversies and claims . . . which may arise out of or in connection with the Agreement or a breach, termination or invalidity thereof." (Mot. to Compel Ex. 1, at 4, ECF No. 10-1).

The Federal Arbitration Act ("FAA") requires district courts to direct parties to arbitrate "any issue referable to arbitration under an agreement in writing for such arbitration."[12] 9 U.S.C. § 3 (2012); see KPMG LLP v. Cocchi, 132 S.Ct. 23, 25-26 (2011) ("[D]istrict courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

In the Fourth Circuit, a court must enter an arbitration order if the petitioner demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which

---

[12] The Court will apply the FAA as opposed to the Maryland Uniform Arbitration Act because "[f]ederal law . . . governs [arbitrability] in either state or federal court." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983).

> purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).

"[A] disagreement about whether an arbitration clause . . . applies to a particular type of controversy" raises a question of arbitrability. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002). An order to arbitrate a particular dispute may be denied where the agreement "is not susceptible of an interpretation that covers the asserted dispute." AT & T Tech., Inc. v. Commc'ns. Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). While doubts should be resolved in favor of coverage, Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, district courts must recognize that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam, 537 U.S. at 83 (quoting Warrior & Gulf Navigation Co., 363 U.S. at 582).

In the instant Complaint, IMMDF brought claims for recognition of the Iraqi judgment (Count I) and fraudulent

conveyance (Count II).[13]   (ECF No. 1).   Because the Court will grant summary judgment as to Count I and will not recognize the Iraqi judgment, the Court must determine whether the remaining claim for fraudulent conveyance is arbitrable.

"To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." Mawing v. PNGI Charles Town Gaming, L.L.C., 426 F.App'x 198, 199 (4th Cir. 2011) (quoting J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988)).

In Maryland, a fraudulent conveyance is "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors."   Md.Code Ann., Comm.Law § 15-207 (West 2015).   A creditor is "a person who has any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."   Id. § 15-201(d).

---

[13]   It appears Defendants may be seeking to compel arbitration of the breach of contract claims IMMDF brought against Harmoosh on July 30, 2010 in this Court; however, the disputes presented in the instant Complaint do not include IMMDF's breach of contract claims.   Harmoosh has not filed a separate action or a counterclaim to compel arbitration of the breach of contract claims.   The Court, therefore, may not submit the breach of contract claims to arbitration at this time.

In the 2011 Opinion, the Court determined IMMDF's claims for breach of the promissory note depended upon the existence of the Loan Agreement, which included a valid arbitration provision. Al Harmoosh, 769 F.Supp.2d at 842. The arbitration provision relates to all disputes, controversies, and claims arising out of or in connection with the Loan Agreement. IMMDF asserts that it has been a "judgment creditor of Harmoosh since at least 2010, and is currently owed in excess of $2,000,000 pursuant to its [Iraqi] Judgment against Harmoosh." (Compl. ¶ 33, ECF No. 1).

Because the Court will not recognize the Iraqi Judgment, IMMDF would not be Harmoosh's creditor absent the Loan Agreement. IMMDF's fraudulent conveyance claim is related to Harmoosh's debt to IMMDF under the Loan Agreement and the promissory note. The claim, therefore, arises out of or in connection with the Loan Agreement and is subject to arbitration. Accordingly, the Court will grant the Motion to Compel as to Count II and dismiss this matter. See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable").

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendants' Motion to Compel Arbitration and Dismiss or Stay

Action (ECF No. 10) is GRANTED.  Count II of the Complaint shall

be submitted to arbitration.  The Clerk shall CLOSE this case.

A separate order follows.

Entered this 30th day of March, 2016

                                        /s/
                              _____
                              George L. Russell, III
                              United States District Judge