IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRAQ MIDDLE MARKET
DEVELOPMENT FOUNDATION,          :

    Plaintiff,                  :

v.                                :     Civil Action No. GLR-15-1124

MOHAMMAD ALI MOHAMMAD             :
HARMOOSH, et al.,
                                  :
    Defendants.
                                  :

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants Mohammad Ali Mohammad Harmoosh and Jawad Alharmoosh's Motion for Summary Judgment and to Compel Arbitration (ECF No. 49). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

## I.    BACKGROUND[1]

Plaintiff Iraq Middle Market Development Foundation ("IMMDF"), a non-profit corporation, makes and services loans to local businesses in Iraq. <u>Iraq Middle Mkt. Dev.</u>

---

[1] This matter is before the Court on remand following the United States Court of Appeals for the Fourth Circuit's decision in <u>Iraq Middle Market Development Foundation v. Harmoosh</u>, 848 F.3d 235 (4th Cir. 2017). Unless otherwise noted, the Court repeats here the facts outlined in <u>Harmoosh</u>. Otherwise, the facts here are set forth in Plaintiff Iraq Middle Market Development Foundation's ("IMMDF" or the "Foundation") Complaint and Application to Record Foreign Judgment ("Complaint") (ECF No. 1). To the extent the Court discusses facts not alleged in the Complaint, they are uncontroverted and the Court views them in the light most favorable to IMMDF. The Court will address additional facts when discussing applicable law.

Found. v. Harmoosh, 848 F.3d 235, 237 (4th Cir. 2017). On November 10, 2006, IMMDF agreed to lend $2 million to an entity Harmoosh controlled. Id.; (Compl. ¶ 8, ECF. No. 1). The loan agreement includes an arbitration clause specifying that "[a]ll disputes, controversies and claims between the parties which may arise out of or in connection with the Agreement . . . shall be finally and exclusively settled by arbitration." Harmoosh, 848 F.3d at 237. The clause identifies Amman, Jordan as the venue for arbitration. Id. As part of the loan agreement, Harmoosh executed a promissory note guaranteeing repayment of the loan. Id.

In 2010, after Harmoosh had refused to repay the loan, IMMDF tried to collect by suing him for breach of contract in this Court. Id. Harmoosh moved to dismiss, arguing that his alleged breach was an arbitrable dispute "aris[ing] out of or in connection with" the loan agreement. Id. The Court agreed and dismissed IMMDF's complaint. Id. (citing Iraq Middle Mkt. Dev. Found. v. Al Harmoosh, 769 F.Supp.2d 838, 842 (D.Md. 2011)). Harmoosh, however, did not move to compel arbitration, as he was entitled to do under the Federal Arbitration Act ("FAA"). Harmoosh, 848 F.3d at 237 (citing 9 U.S.C. § 3 (2012)).

In February 2014, IMMDF filed another civil action against Harmoosh to collect on the promissory note, this time in the Court of First Instance for Commercial Suites ("CFICS") in Baghdad, Iraq. Id.; (Compl. ¶ 13). Harmoosh appeared in that court through counsel and asserted at least two affirmative defenses. Harmoosh, 848 F.3d at 237. First, he contended that the court lacked personal jurisdiction. Id. Second, Harmoosh argued that he was not personally liable because he guaranteed the loan only

in his capacity as a shareholder.  Id.  The parties disagree as to whether Harmoosh raised the arbitration clause as a third defense.  Id.  It is undisputed that, under Iraqi law, although a valid arbitration clause deprives a court of jurisdiction over arbitrable disputes, a party waives his right to arbitrate if he fails to assert it before the trial court. Id. (citing Art. 253, Amended Civ. Proc. Code No. 83 of 1969 (Iraq)).

In any event, IMMDF and Harmoosh litigated their dispute to final judgment in Iraq.  Id.  In April 2014, the CFICS found in favor of IMMDF and awarded it $2 million in damages and $424.91 in costs and legal fees (the "Iraqi Judgment").  Id.  Harmoosh appealed the Iraqi Judgment to the Baghdad/Al-Rasafa Federal Court of Appeals (the "Intermediate Appellate Court"), which affirmed.  Id.  Harmoosh then appealed to the Federal Court of Cassation of Iraq, the court of last resort for commercial disputes, which also affirmed.  Id.

On April 20, 2015, IMMDF returned to this Court and filed a two-count Complaint against both Harmoosh and Alharmoosh.  (ECF. No. 1).  Count I seeks recognition of the Iraqi Judgment under the Maryland Uniform Foreign Money-Judgments Recognition Act (the "Maryland Recognition Act"), Md. Code Ann., Cts. & Jud. Proc. ["CJP"] §§ 10-701 et seq. (West 2016). (Compl. ¶¶ 20−22).  Count II alleges that Harmoosh fraudulently conveyed some of his assets both before and after the CFICS rendered the Iraqi Judgment.  (Id. ¶¶ 23−35).

The following month, Defendants filed a Motion to Compel Arbitration and Dismiss or Stay Action (ECF No. 10), contending that the Iraqi Judgment was not entitled to recognition because the parties agreed to arbitrate their disputes.  Harmoosh,

3

848 F.3d at 238. The Court concluded that "IMMDF's Iraqi judgment on the promissory note is contrary to the parties' agreement to arbitrate" under section 10-704(b)(4) of the Maryland Recognition Act. (Mar. 30, 2016 Mem. Op., at 22, ECF No. 20). The Court also concluded that IMMDF's fraudulent conveyance claim is related to Harmoosh's debt under the loan agreement and promissory note and is therefore subject to arbitration. (Id. at 26). Accordingly, the Court granted Defendants' motion as to both Counts of the Complaint, directed that Count II between submitted to arbitration, and dismissed the matter. (Id. at 22−23, 26−27).

IMMDF appealed to the United States Court of Appeals for the Fourth Circuit. (Notice Appeal, ECF No. 23). The Fourth Circuit held that the "arbitration clause exception" set forth in section 10-704(b)(4) of the Maryland Recognition Act is inapplicable where parties choose to forego their rights to arbitrate by participating in foreign judicial proceedings. Harmoosh, 848 F.3d at 240. The Fourth Circuit also determined that "genuine issues of material fact remain as to whether Harmoosh defaulted his right to arbitrate," citing the FAA as governing law. Id. at 241−42. The Fourth Circuit acknowledged that the parties had not conducted discovery, thus adding that "it is too soon to say whether Harmoosh defaulted his arbitration rights." Id. at 238, 242 n.2. Consequently, the Fourth Circuit remanded the matter to this Court. Id. at 242.

On February 5, 2018, Defendants filed their Motion for Summary Judgment and to Compel Arbitration. (ECF No. 49). IMMDF filed an Opposition on February 27, 2018. (ECF No. 52). On March 13, 2018, Defendants filed a Reply. (ECF No. 53).

4

## II. DISCUSSION

### A. <u>Standard of Review</u>

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). "This obligation is particularly strong when the non-moving party bears the burden of proof." <u>Pachaly v. City of Lynchburg</u>, 897 F.2d 723, 725 (4th Cir. 1990) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one

inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23.

**B.      Analysis**

IMMDF brings this suit under the Maryland Recognition Act. Generally, the Act empowers the Court to recognize and enforce a foreign money judgment that is "final, conclusive, and enforceable where rendered." CJP §§ 10-702 to -703 (West 2018). It enumerates an array of exceptions, some of which dictate that a foreign judgment is not conclusive. Id. § 10-704(a). Others are discretionary in nature. Id. § 10-704 (b).

Here, Harmoosh raises several grounds for nonrecognition under the Maryland Recognition Act, including that the Iraqi Judgment: (1) "was obtained through a proceeding in a foreign court that was contrary to an agreement between the parties under which the dispute [was] subject to an arbitration provision"; (2) "conflicts with another final and conclusive judgment"; and (3) "was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law." (Defs.' Mot. Summ. J. & Compel Arb. ["Defs.' Mot."] ¶¶ 2−4, ECF No. 49). The Court agrees that the Iraqi Judgment falls under the "arbitration clause exception."

The Maryland Recognition Act's "arbitration clause exception" states that a court need not recognize a foreign money judgment if "[t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute was to be settled out of court." CJP § 10-704(b)(4). Foreign judicial proceedings "are not 'contrary to' an arbitration clause for purposes of the Maryland Recognition Act if the parties choose to forego their rights to arbitrate by participating in those proceedings." Harmoosh, 848 F.3d at 240. The question of "whether the Foundation has raised genuine issues of material fact as to whether Harmoosh decided to forego his arbitration rights" is governed by the FAA. Id. at 240−41.

As the Fourth Circuit has explained, "[u]nder the FAA, a party may lose its right to compel arbitration if it 'is in default in proceeding with such arbitration.'" Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012) (quoting 9 U.S.C. § 3). "'[D]efault' is akin to waiver." Id. The concepts, however, are "not

7

identical." Id.² "Unlike some waiver doctrines, 'the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred.'" Id. (quoting Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985)). A litigant generally defaults his or her "right to invoke the FAA where it so substantially utilize[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." Id. (alteration in original) (quoting Forrester, 553 F.3d at 343).

In Harmoosh, the Fourth Circuit resolved the prejudice prong in IMMDF's favor. 848 F.3d at 241. As a result, the Court need not revisit it. The remaining issue, therefore, is whether IMMDF raised genuine disputes of material fact as to whether Harmoosh

---

² Notably, in Harmoosh, the Fourth Circuit cited its prior decisions in Rota-McLarty and other cases discussing "default" under the FAA but then mentioned "waiver" in its analysis. See, e.g., Harmoosh, 848 F.3d at 241−42 (mentioning Harmoosh's "waiver of the arbitration right" and concluding that "[a] reasonable factfinder could determine that Harmoosh chose to waive his right to arbitrate"). The Fourth Circuit believed, however, that it was "too soon to say whether Harmoosh defaulted his arbitration rights." Id. at 242 n.2. Given the Fourth Circuit's ruling that the FAA "governs resolution of th[e] question" of whether IMMDF "has raised genuine issues of material fact as to whether Harmoosh decided to forego his arbitration rights," id. at 240−41, the Court's analysis in this Opinion will adhere to federal default law, rather than principles relating to waiver. See Butler v. Mariner Fin., LLC, No. CCB-17-1738, 2017 WL 6406804, at **2−3 (D.Md. Dec. 15, 2017) (explaining: (1) "[b]ecause the Federal Arbitration Act ('FAA') controls this case, federal waiver law applies"; (2) under the FAA, "a party may lose its right to compel arbitration under a valid agreement if it is in 'default'"; and (3) "[d]efault under the FAA is a narrower version of waiver" (quoting 9 U.S.C. § 3) (citing Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342 (4th Cir. 2009)). To avoid confusion, the analysis will use only the term "default." Compare Rota-McLarty, 700 F.3d at 702 ("This principle of 'default' is akin to waiver, but not identical."), with id. at 702 n.11 ("Accordingly, we employ our recent approach of substituting the term 'default' for the term 'waiver' in the FAA context, in order 'to achieve uniformity and prevent confusion.'" (quoting Wheeler Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 586 n.3 (4th Cir. 2012))).

substantially utilized the litigation machinery in Iraq. Rota-McLarty, 700 F.3d at 702; see Harmoosh, 848 F.3d at 241−42 (separately addressing prejudice and use of litigation); Aptim Corp. v. McCall, 888 F.3d 129, 140 (5th Cir. 2018) ("The right to arbitrate can be waived if a party (1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party."). At bottom, the Court concludes that IMMDF failed to do so. The Court first addresses which party bears the burden of establishing default.

### 1. Burden of Establishing Default

IMMDF suggests that Harmoosh, as the party asserting affirmative defenses under CJP § 10-704, bears the burden of proving them. (See Pl.'s Opp'n at 9, ECF No. 52) (citing Courage Co., L.L.C. v. Chemshare Corp., 93 S.W.3d 323, 331 (Tex.App. 2002)). That burden does not apply to the particular issue before the Court. In Harmoosh, the Fourth Circuit expressly ruled that the FAA governs the question of whether IMMDF "has raised genuine issues of material fact as to whether Harmoosh decided to forego his arbitration rights." 848 F.3d at 240−41. It further ruled that that question turns upon whether Harmoosh "is 'in default in proceeding with such arbitration'" under the FAA, not principles relating to waiver. Id. (quoting 9 U.S.C. § 3). In addition, in the context of interpreting the FAA, the Fourth Circuit has held that "the party opposing arbitration bears a heavy burden to prove default." Rota-McLarty, 700 F.3d at 702 (citing Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996)).

In this matter, IMMDF seeks to avoid entry of summary judgment directing the parties to arbitrate their dispute in accordance with the loan agreement and promissory

note on the basis that Harmoosh decided to forego his arbitration right during the Iraqi court proceedings. (Pl.'s Opp'n at 1, 10−16). There can be no genuine dispute of material fact, then, that IMMDF is the "party opposing arbitration." See Rota-McLarty, 700 F.3d at 702 (citing Am. Recovery, 96 F.3d at 95). Given these circumstances, the Court concludes that IMMDF bears the "heavy burden" of proving Harmoosh "defaulted" his arbitration right. See id.

### 2. Whether Harmoosh Defaulted His Arbitration Right

Turning to whether Harmoosh defaulted his arbitration right, IMMDF's sole contention is that a genuine dispute of fact remains as to whether Harmoosh waived his arbitration right. Specifically, it emphasizes official Iraqi court records in arguing that Harmoosh did not assert an arbitration defense during a hearing held before the CFICS in Iraq on April 8, 2014. This argument is unavailing.

Here, IMMDF fails to highlight material facts. A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. As a matter of law, "simply failing to assert arbitration as an affirmative defense does not constitute default of a right to arbitration." Forrester, 553 F.3d at 343 (citing Am. Recovery, 96 F.3d at 96). Consequently, even if the evidence before the Court would enable a reasonable factfinder to find that Harmoosh failed to raise an arbitration defense at the April 8, 2014 hearing, that finding, without more, would be legally insufficient to establish default. In other words, as a matter of law, the finding would not "affect the outcome of the suit under the governing law." See Anderson, 477 U.S. at 248; see also Hooven-Lewis, 249 F.3d at 265. Having offered up

no further contention, IMMDF has failed to satisfy its "particularly strong" "obligation" of identifying sufficient facts showing that Harmoosh defaulted his arbitration right. See Matsushita, 475 U.S. at 586−87; Rota-McLarty, 700 F.3d at 702 (citing Am. Recovery, 96 F.3d at 95); Pachaly, 897 F.2d at 725.

To be certain, the undisputed evidence reveals that Harmoosh did not utilize Iraq's litigation machinery in a substantial manner. The record before the Court does not present a case like Forrester, where the parties had engaged in "extensive pretrial preparations" by the time they moved to compel arbitration. 553 F.3d at 343. The defendants in that case waited until the eve of trial to file their motion to compel arbitration. Id. By that time, the parties had conducted multiple depositions, litigated a motion for summary judgment and motions in limine, and submitted an array of pretrial filings. Id. Against these facts, the Fourth Circuit opined that "[t]o permit litigants to participate fully in discovery, make motions going to the merits of their opponent's claims, and delay assertion of a contractual right to compel arbitration until the eve of trial defeats one of the reasons behind the federal policy favoring arbitration." Id. (quoting ComTech Assocs. V. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1577 (2d Cir. 1991)). The Court cannot draw the same observations from the record in this matter.

Here, it is undisputed that matters before Iraq's CFICS are scheduled for an initial hearing within fifteen days after suit commences and are quickly resolved. (Dawood Rebuttal Decl. ¶¶ 15–16, ECF No. 52-4). In fact, the Iraqi suit at issue here: (1) was scheduled for an initial hearing only fourteen days after IMMDF initiated suit; (2) involved only five hearings, including four at which at least one of the parties appeared;

11

and (3) resolved in just under two months. (Id. ¶ 16; Aug. 22, 2017 Dhia Dep. at 40:15−20, 54:14−18, 56:10−22, 62:7−11, ECF No. 49-8). Furthermore, litigants generally must submit all pleadings and evidence to the CFICS ahead of the initial hearing. (Dawood Decl. ¶ 33, ECF No. 52-3). They are not, however, provided a procedural tool comparable to the United States' discovery process. (Aug. 21, 2017 Al-Waeli Dep. at 111:8−25, ECF No. 53-1). Rather, they must first raise questions concerning any evidence at a hearing before a judge, (id.), indicating lack of opportunity for litigants to review and scrutinize newly identified evidence concerning the merits.

Additionally, counsel for Harmoosh did not appear before the CFICS until the third hearing, and neither party had submitted the loan agreement containing the arbitration clause at issue to the court until the fourth hearing, held on April 8, 2014, because IMMDF sued only on the promissory note. (Aug. 22, 2017 Dhia Dep. at 68:6–12, ECF No. 52-10; Aug. 21, 2017 Al-Waeli Dep. at 70:4−19, 71:24–73:5, ECF No. 49-10). The court issued its ruling only one day later on April 9, 2014. (Defs.' Mot. Ex. J at 4, ECF No. 49-13).[3] The record is bereft of any evidence that, by that time, the parties had conducted multiple depositions, filed dispositive motions, and submitted an array of pretrial filings. See Forrester, 553 F.3d at 343. Nor is there any evidence that the Iraqi court judge heard or considered witness testimony.

Notably, it is undisputed that on appeal to the Iraqi Intermediate Appellate Court, Harmoosh challenged the Iraqi Judgment based on the arbitration clause's existence.

---

[3] Citations to Exhibit J refer to the pagination the Court's Case Management and Electronic Court Filing system assigned it.

(Defs.' Mot. Ex. K at 2, ECF No. 49-14[4]; Dawood Decl. ¶ 52). While the court "reject[ed] the objections and grounds for appeals" and affirmed the Iraqi Judgment, (Defs.' Mot. Ex. L at 6, ECF No. 49-15)[5], it is unclear from the record why it rejected the arbitration-related objection. On balance, though IMMDF's Iraqi suit culminated in a final money judgment, any notion that the judgment resulted from "extensive pretrial preparations" over the course of years is belied by the record. See Forrester, 553 F.3d at 343.

In reaching its conclusion, the Court is mindful of the "federal policy favoring arbitration," IMMDF's "heavy burden" in proving that Harmoosh defaulted his arbitration right, and the Fourth Circuit's mandate against lightly inferring that default has occurred. Rota-McLarty, 700 F.3d at 702. The Court is also mindful that "[a]ny doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." MicroStrategy, 268 F.3d at 249 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983)). Guided by these considerations, the Court concludes that there is no genuine dispute of material fact that Harmoosh did not default his arbitration right when he participated in the Iraqi litigation. Consequently, the Court further concludes that the Iraqi Judgment is "contrary to" the parties' agreement to arbitrate claims like those

---

[4] Citations to Exhibit K refer to the pagination the Court's Case Management and Electronic Court Filing system assigned it.

[5] Citations to Exhibit L refer to the pagination the Court's Case Management and Electronic Court Filing system assigned it.

currently before the Court. The Court with, therefore, exercise its discretion under § 10-704(b)(4) of the Maryland Recognition Act and decline to recognize the Iraqi Judgment.[6]

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and to Compel Arbitration. A separate Order follows.

/s/
_____
George L. Russell, III
United States District Judge

---

[6] The Court previously determined that IMMDF's fraudulent conveyance claim related solely to Harmoosh's debt under the loan agreement and promissory note and, thus, was subject to arbitration. (Mar. 30, 2016 Mem. Op. at 26). The same rationale applies here. The Court will, therefore, order Count II of IMMDF's Complaint to be submitted to arbitration.